## A96A0895. SMITH v. THE STATE.
(474 SE2d 272)

BEASLEY, Chief Judge.

Smith appeals the denial of his motion for new trial after being tried and convicted by jury of burglarizing the Folkston Golf Club in Charlton County. OCGA § 16-7-1.

1. Smith first contends there was insufficient credible evidence to convict him of the crime beyond a reasonable doubt. The evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). *Howard v. State*, 261 Ga. 251, 252 (403 SE2d 204) (1991); *King v. State*, 213 Ga. App. 268, 269 (444 SE2d 381) (1994). Although the evidence was contradictory, there was sufficient evidence to meet the test as to each element of the charge that Smith without authority and with the intent to commit a theft broke into the golf club tool shed.

Gibson, an admitted accomplice, testified that Smith was involved in the burglary. Gibson claimed he knew nothing of the burglary but was merely asked by his friend, Maxwell, to drive to a road near the golf course. When Gibson and Maxwell arrived, Smith came out of the woods and loaded the car with an air compressor, a welder, a jigsaw, and other tools. Smith told Gibson to drive to his house where the equipment was unloaded. The jigsaw was left in Gibson's car, and Smith later told him he could have it.

The State called Lloyd to testify he had called Detective Jones of the Charlton County Sheriff's Office about three weeks after the burglary and told Jones that Smith offered to sell him a welder and an air compressor stolen by Smith. Lloyd testified instead that he told Jones that Gibson, not Smith, contacted him and wanted to sell him

a car full of tools. Detective Jones testified as to Lloyd's prior inconsistent statement.

Pamela Smith, the defendant's niece, was called to testify that she had seen a welder and an air compressor in Smith's house, where she was living. She instead testified she told Jones she had not seen such items in the house. When recalled, Jones testified as to Pamela Smith's original statement.

Davis testified on Smith's behalf. He identified the stolen welder as having been sold to him by a black man he did not know and by a white man whom he had recognized. He stated neither Smith nor Gibson was the black man. Jones testified that Davis identified two persons in a photo lineup other than Gibson and Smith as the two men who attempted to sell him the welder stolen from the golf club.

"Conflicts in the testimony of the witnesses, including the [S]tate's witnesses, is a matter of credibility for the jury to resolve. [Cits.] As long as there is some [competent] evidence, even though contradicted, to support each fact necessary to make out the [S]tate's case, the jury's verdict will be upheld. [Cit.]" *Searcy v. State*, 236 Ga. 789, 790 (225 SE2d 311) (1976).

2. Smith's next enumeration also challenges the sufficiency of the evidence and is reviewed under that standard. He cites OCGA § 24-4-8, which provides that in "felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness. . . ." Smith contends this prohibits his conviction on the testimony of accomplice Gibson, when it was corroborated only by the impeachment testimony of Jones.

*Gibbons v. State*, 248 Ga. 858, 862 (286 SE2d 717) (1982), held that "a prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence, and is not limited in value only to impeachment purposes." Smith's niece and Lloyd had made statements to a law enforcement officer that were inconsistent with statements they made while subject to cross-examination.

We find no Georgia case prohibiting conviction solely upon an accomplice's testimony corroborated by *Gibbons*-type testimony. Cases that have addressed the issue of corroboration evidence under OCGA § 24-4-8 have favored a finding of sufficiency: "If the verdict is founded on slight evidence of corroboration connecting a defendant with the crime, the verdict is legally sufficient. (Cit.) The necessary corroboration may consist entirely of circumstantial evidence, and evidence of the defendant's conduct before and after the crime was committed may give rise to an inference that he participated in the crime. [Cits.]" (Punctuation omitted.) *Bradford v. State*, 262 Ga. 512

(421 SE2d 523) (1992). See also *Belcher v. State*, 207 Ga. App. 117, 118 (427 SE2d 88) (1993) (not necessary that corroboration of testimony given by an accomplice of itself be sufficient to warrant a guilty verdict, or that testimony of accomplice be corroborated in every particular; amount of corroborative extraneous evidence necessary to connect accused with the commission of the offense is within the province of the jury).

3. Smith enumerates as error that, in violation of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), the prosecution failed timely to disclose evidence and information favorable to Smith. The test is whether the material suppressed was favorable to the accused as to the issues of guilt or punishment, and whether the accused timely requested the favorable material. *Brady*, supra at 87; *United States v. Bagley*, 473 U. S. 667, 675 (105 SC 3375, 87 LE2d 481, 489) (1985); *Stroud v. State*, 246 Ga. 717, 720 (2) (c) (273 SE2d 155) (1980).

(a) Smith contends the prosecution had information suggesting two individuals other than Smith and Gibson actually possessed and sold the stolen welder to Davis. The State had submitted Davis's written statement to Smith before trial, but withheld the fact that Davis had identified in a photo lineup someone other than Smith as the man who tried to sell the equipment to him.

This error was not preserved for appeal. Smith objected on the basis of hearsay and not on the grounds of a *Brady* violation. A defendant may not raise an alleged *Brady* violation for the first time on appeal. *Carter v. State*, 142 Ga. App. 351, 352 (3) (235 SE2d 750) (1977). Smith's objection on hearsay grounds is insufficient. In order to preserve an objection upon a specific ground for appeal, the objection must be made at trial upon that specific ground. *Norman v. State*, 197 Ga. App. 333, 334 (3) (398 SE2d 395) (1990).

Even if properly preserved, *Brady* was not violated since it does not require *pretrial* disclosure of exculpatory material. It applies only to the discovery *after trial* of information which had been known to the prosecution but unknown to the defendant. See *Smith v. State*, 214 Ga. App. 631, 634 (12) (448 SE2d 906) (1994). When the material is disclosed at trial, as it was during Jones' testimony, there is no *Brady* violation. *Fuqua v. State*, 183 Ga. App. 414, 417 (1) (b) (359 SE2d 165) (1987).

Smith argues *Brady* is violated if the defendant is able to show that pretrial disclosure would have benefitted him and that the delayed disclosure denied him a fair trial. He cites *Dennard v. State*, 263 Ga. 453, 454 (4) (435 SE2d 26) (1993), and *Jordan v. State*, 217 Ga. App. 420, 421 (1) (457 SE2d 692) (1995), maintaining that had he known before trial, he could have ensured that the two other men in the lineup would have been available to testify. He could have asked

for a recess or a continuance during trial to achieve the same result.

Furthermore, the information is not exculpatory, since it shows only that two other men were in possession of stolen goods a few weeks after the burglary. *Brady* applies only to exculpatory information, which is defined "as clearing or tending to clear from alleged fault or guilt; excusing." *Moclaire v. State*, 215 Ga. App. 360 (1) (451 SE2d 68) (1994). Evidence that someone else tried to sell the stolen items to Davis is also irrelevant, since the State did not accuse Smith of selling the stolen property. OCGA § 24-2-1.

(b) Smith asserts the State committed an additional *Brady* violation by not following up on Gibson's statement that he was at his girl friend's house prior to the burglary of the golf club. Smith's counsel contacted Gibson's girl friend, Ford, after trial and discovered she had not been interviewed by the State. Ford's post-trial affidavit stated Gibson was not at her house prior to driving to the pickup point. Smith maintains he was harmed in that he could not impeach Gibson with a pretrial statement from Ford which the State was obliged to obtain.

*Brady* would be implicated only if the State had a duty to check with Ford to determine if Gibson was telling the truth on this point. Apparently, Gibson's whereabouts prior to the burglary were of little or no importance to the State, so Ford simply was not contacted. "The State is under no requirement to conduct an investigation on behalf of a defendant. [Cit.]" (Punctuation omitted.) *Wright v. State*, 211 Ga. App. 474, 476 (2) (440 SE2d 27) (1993). Prosecutorial inaction cannot bring Ford's post-trial information within the ambit of *Brady*. Besides, once Smith heard the details of Gibson's testimony at trial, he could have sought to contact Ford for her testimony but failed to do so.

4. The State was permitted to impeach Lloyd, its own witness, because he had made a previous contradictory statement to Detective Jones. OCGA § 24-9-81. Smith alleges the trial court erred in admitting a certified copy of an indictment, plea bargain agreement, and probation order for Lloyd for possession of a firearm by a convicted felon and for a drug charge. The weapons charge had been dismissed in exchange for a guilty plea to the drug charge, but the entire document was admitted into evidence without redaction.

A witness may be impeached by showing a conviction of a crime of moral turpitude. *Syfrett v. State*, 210 Ga. App. 185, 187 (4) (435 SE2d 470) (1993). Specific instances of misconduct may not be used to impeach a witness's character or credibility, unless the misconduct has resulted in conviction of such a crime. *Woods v. State*, 210 Ga. App. 172, 173 (1) (435 SE2d 464) (1993). "[A] mere indictment or a charge or an arrest or a trial and acquittal . . . are not legal methods of impeachment." (Citations and punctuation omitted.) *Syfrett*,

supra. The proper method of proving the conviction is by introducing a certified copy. *Woods,* supra. We must determine whether admitting evidence of the prior felony charge constituted prejudicial error and, if so, if it was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U. S. 18, 24 (III) (87 SC 824, 17 LE2d 705) (1967); *Barr v. State,* 216 Ga. App. 554, 556 (2) (455 SE2d 99) (1995).

As to the weapons charge, admitting the indictment was error since Lloyd had never been convicted of that crime; a conviction must be shown. *Woods,* supra. Smith argues the error was harmful in that the indictment and probation dealt with a completely different crime than that earlier acknowledged by Lloyd. Smith also argues that because Lloyd's testimony was helpful to Smith and was challenged by a law enforcement officer, Lloyd's credibility was critical, as evidenced by the jury's difficulty on the issue of credibility of witnesses.

Prior to the State's introduction of the document, Lloyd admitted on cross-examination that he had "been in trouble and got on probation," and acknowledged he had handled "hot" merchandise in the past. Given that the document was cumulative of other evidence as to Lloyd's character which he himself introduced, no harm occurred.[1] Since the information did not add measurably to impeachment, it is highly probable that it did not contribute to the jury's verdict against Smith. Cf. *Stewart v. State,* 220 Ga. App. 295, 296 (2) (469 SE2d 424) (1996).

5. Smith next contends the court erred in refusing to give a cautionary instruction that Gibson was an accomplice witness as defined in OCGA § 24-4-8, that the jury should receive accomplice testimony with caution and suspicion and that "there is a fine line between plea bargaining and coerced confessions." The standard of review is whether the trial court abused its discretion. *Whitworth v. Connecticut Indem. Co.,* 185 Ga. App. 682, 683 (2) (365 SE2d 523) (1988).

The trial court found the request untimely, since Smith did not submit it until just before closing arguments. Uniform Superior Court Rule 10.3 requires, "All requests to charge shall be . . . submitted to the court . . . at the commencement of trial, unless otherwise provided by pre-trial order; provided, however, that additional

---

[1] Because we determine that admission of the document was harmless error, we do not address the issue of whether any portion of the document, such as the guilty plea on the drug charge, would have been admissible if inadmissible portions were redacted. See, e.g., *Stewart v. State,* 220 Ga. App. 295 (2) (469 SE2d 424) (1996); *Willis v. State,* 214 Ga. App. 659, 660 (2) (448 SE2d 755) (1994). Compare *Eiland v. State,* 213 Ga. App. 838 (445 SE2d 765) (1994) (given extreme prejudicial nature of indictment and lack of overwhelming evidence of guilt, trial court's failure to either redact objectionable material or to keep entire indictment out of evidence mandated a reversal of the conviction). In the redaction cases cited, the State was attempting to impeach the *defendant,* not a witness, but the determining issues are the same.

requests may be submitted to cover unanticipated points which arise thereafter." The issue of Gibson as an accomplice was not unanticipated. Refusing to give the requested charge was not error on this basis. *Gen. Warranty Corp. &c. v. Cameron-Hogan, Inc.*, 182 Ga. App. 434, 438 (9) (356 SE2d 83) (1987).

Nor is this an instance "where there has been a substantial error in the charge which was harmful as a matter of law." OCGA § 5-5-24 (c). The charges given essentially covered Smith's requests, including instructions on OCGA § 24-4-8 and on the jury being the exclusive judge of credibility. If instructions substantially relate the principles in the requested charge, there is no reversible error. *Wright v. State*, 211 Ga. App. 474, 477 (4) (440 SE2d 27) (1993).

6. Smith's final enumeration is that the court erred in failing to grant a new trial on the basis of newly discovered evidence. " ' "It is incumbent on a party who asks for a new trial on [this] ground . . . to satisfy the court: (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness." [Cits.]' *Timberlake v. State*, 246 Ga. 488[, 491 (1)] (271 SE2d 792) [(1980)]." *Greenway v. State*, 207 Ga. App. 511, 515 (6) (428 SE2d 415) (1993).

With regard to Davis's identification of the two men in the photo lineup, the standard is not met as to the first prong, since this evidence was disclosed at trial by Jones. Further, as discussed in Division 3 (a), Smith failed to exercise due diligence to ensure that the two other men were present to testify once they were identified at trial, and the information at issue is neither exculpatory nor material.

As to Ford's affidavit, while her contradicting Gibson's testimony on his whereabouts before the burglary did not come to light until after trial, as discussed in Division 3 (b), Smith failed to exercise due diligence to follow up when he heard the details. In addition, Ford's affidavit would have been used solely to impeach Gibson, thus running afoul of the sixth part of the test.

The conditions necessary for granting a new trial were not present as to either piece of "newly discovered" evidence. Denial of the motion for a new trial on this ground was proper.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED JULY 30, 1996.

*Gary E. Gowen*, for appellant.
*Richard E. Currie, District Attorney, Alexander J. Markowich, Assistant District Attorney*, for appellee.